**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER G. VOLMERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:23-cv-01143-AGF |
| ) | |
| CAROLYN COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Christopher G. Volmert was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.   For the reasons set forth below, the decision of the Commissioner will be affirmed.

# BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 20-1), which have been admitted by Defendant (ECF No. 25-1).   Together, these statements provide a fair description of the record before the Court.   Specific facts will be discussed as needed to address the parties'

---

[1]    Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn Colvin should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

arguments.

Plaintiff, who was born on December 10, 1955, protectively applied for benefits on September 24, 2020. He alleged disability beginning on January 26, 2018, due to back problems, spinal stenosis, degenerative disc disease, herniated disc L4/L5, scoliosis, diabetes, and depression. Tr. 191. Plaintiff's application was denied at the administrative level, and he thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A video hearing was held on August 2, 2022. Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. By decision dated August 17, 2022, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine at L4, prostate cancer, and morbid obesity.

The ALJ concluded that none of Plaintiff's impairments or combinations of impairments met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in the Commissioner's regulations, with the following exceptions:

> [He can] lift and carry up to ten pounds occasionally and a negligible amount of weight (such as file folders) frequently. He can sit for a total of up to six hours during an eight-hour workday and can stand or walk for a total of up to two hours during an eight-hour workday. The claimant is able to push and pull at the same level as lifting and carrying. He can occasionally climb ramps or stairs; can never climb ladders, ropes or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can frequently reach, handle and finger. He must avoid concentrated exposure to extreme temperatures, vibration, humidity and atmospheric conditions such

as noxious odors, dusts, fumes or gases. He can occasionally work around hazards such as exposed heights.

Tr. 18.

In making these findings, the ALJ considered the opinion evidence of various medical professionals and providers. Specifically, the ALJ considered the opinion of agency consultant Deborah Wagner, P.A. who examined Plaintiff on January 26, 2021. Wagner documented a limited range of motion in Plaintiff's back and knees but noted that Plaintiff could walk on his heels and toes with only mild difficulty due to obesity, hop on each foot, squat about halfway down, needed no help changing for the examination or getting on and off exam table, could rise from the chair without difficulty, and showed no evidence of joint deformity or sensory deficits. Tr. 19-20, 319-20.

Wagner further noted that straight leg raising was negative, bilaterally; there was no evidence of joint deformity; there were no sensory deficits; Plaintiff was oriented and able to remember three words immediately and after five minutes; and Plaintiff was able to perform simple addition and multiplication. Tr. 19-20; 319-20. The ALJ found that Wagner's opinion supported a finding that the claimant can perform sedentary work with the postural, manipulative, and environmental limitations described above. Tr. 20.

The ALJ also considered the opinions of agency consultants, Donna McCall, D.O. and Renu Debroy, M.D., who provided opinions prior to the initial denial of benefits. These physicians did not examine Plaintiff but reviewed the medical evidence. The ALJ found that Dr. McCall's opinion that Plaintiff could lift and carry up to 50 pounds, could

3

stand and walk four hours in an eight-hour workday, and had unlimited ability to kneel were "not persuasive."  Tr. 20.  The ALJ noted that, while Dr. McCall's findings were supported by citation to the treatment record and discussion of the evidence, they were inconsistent with the objective evidence, including an MRI showing degenerative changes and disc bulge at L4, and were also inconsistent with examination notes indicating a reduced range of motion.  Tr. 20-21.

The ALJ found that the opinion of Dr. Debroy that Plaintiff could lift and carry 10 pounds frequently and could stand and walk for two hours in an eight-hour workday was "somewhat persuasive."  Tr. 21.  The ALJ noted that Dr. Debroy's findings were supported by citation to the treatment record and were consistent with the above-noted evidence of bulging disc at L4 and a reduced range of motion, but that Dr Debroy did not include any limitations in handling and fingering, which were inconsistent with evidence of generalized weakness and fatigue. Tr. 21.

Next, the ALJ evaluated the opinion of agency consultant Thomas J. Spencer, Pys.D., who conducted a psychological evaluation of Plaintiff on August 26, 2021.  Dr. Spencer assessed unspecified depressive disorder with only mild mental impairments, normal cognition, good eye contact, normal speech, a good working knowledge of social norms, average intelligence, ability to perform serial threes, and ability to recall six digits forward and two digits backward.  Tr. 360.  The ALJ concluded that Dr. Spencer's opinions were "persuasive," and supported by citation to both his own and Wagner's consultative examination findings, as well as with the record as a whole, including

4

treatment records containing largely normal mental status examinations and Plaintiff's function report in which he did not indicate any limitation in concentration or completing tasks and also described his daily activities of watching television and reading.   Tr. 15-16, 20-21.

Finally, the ALJ considered the opinion of Plaintiff's treating provider, Wendy Meyr Cherry, M.D.   Dr. Cherry opined that Plaintiff suffered from chronic neck and low back pain that radiated down his left and that Plaintiff would need to alternate between sitting and standing "frequently."   Tr. 412.   Dr. Cherry further opined, by checkbox and circle marks that Plaintiff could occasionally lift and carry up to 10 pounds but never more than 10 pounds, and that Plaintiff could frequently use upper extremities to handle objects and reach both overhead and laterally but could never or rarely push or pull.   Tr. 413.   Dr. Cherry further noted that Plaintiff's walking was "very limited" and that Plaintiff "can't sit more than 30 minutes."   Tr. 413.

The ALJ found that Dr. Cherry's opinion was "not persuasive" because her findings were supported only by "notes and checks on a premade form"; the findings were internally inconsistent, for example because Dr. Cherry found that Plaintiff could never or rarely push or pull, but could frequently use his upper extremities; and the opinion was inconsistent with evidence in the record, including evidence that Plaintiff had a normal gait.   Tr. 21.

The ALJ noted that the treatment notes in the record did not sustain Plaintiff's allegations of disabling pain but instead only supported pain and limitations to the extent

5

described in the RFC.  Tr. 21.  The ALJ also relied on the above-noted medical opinion evidence, as well as treatment records and Plaintiff's reports of daily activities, to discount to some degree Plaintiff's subjective complaints of pain.

Next, relying on the VE's testimony regarding a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience), the ALJ found that Plaintiff remained able to perform his past relevant work as a document preparer both as Plaintiff actually performed this job and as it is generally performed in the national economy (unskilled work at the sedentary level of exertion).  Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on July 18, 2023.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In his brief before this Court, Plaintiff argues that the ALJ erred by improperly assessing the opinion evidence of the above-noted medical professionals and Plaintiff's subjective testimony, which resulted in an RFC not supported by substantial evidence. Plaintiff asks that the ALJ's decision be reversed and that benefits be awarded or the case be remanded for further proceedings.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by

substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides

whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.   If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.   If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.   *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).   But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant.   *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**<u>Evaluation of Opinion Evidence and Plaintiff's Credibility</u>**

"When assessing the claimant's residual functional capacity, the ALJ must weigh the various medical opinions in the record and resolve any conflicts among them." *Bradford v. O'Malley*, 104 F.4th 1055, 1059 (8th Cir. 2024) (citation omitted).   Under the recently revised regulations, "treating physicians are no longer entitled to special deference."  *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citation omitted).

8

Rather, the ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). "[T]he first two factors—supportability and consistency—are the most important." *Austin*, 52 F.4th at 728 (citations omitted).

Here, the ALJ performed an independent review of the medical record as required, including the objective medical evidence of prior medical procedures and MRI scans, physical examinations, pain management treatment, consultative examinations, and diagnoses, along with Plaintiff's subjective complaints of disabling symptoms and limitations. The ALJ then properly evaluated the persuasiveness of each medical opinion by considering the above-noted factors.

The ALJ did not give controlling weight to any single medical opinion but rather considered the views of the examining and non-examining agency physicians, which taken together, supported the RFC assessment. And the ALJ did not totally discredit the opinion of Plaintiff's treating provider, Dr. Cherry. His RFC assessment incorporated Dr. Cherry's findings that Plaintiff could occasionally lift and carry only up to 10 pounds and could frequently reach and handle. Tr. 18, 412. However, the ALJ reasonably concluded that Dr. Cherry's findings of more severe limitations, such as rarely or never being able to push or pull and not being able to sit for more than 30 minutes, were

9

inconsistent with the record as a whole.

Dr. Cherry did not explain these more severe limitations or cite to any medical evidence support of them.   Rather, her opinion consisted primarily of conclusions and checkmarks apparently based on Plaintiff's subjective complaints, which the ALJ did not find wholly credible.   The Eighth Circuit has held that a medical checkbox opinion is "entitled to relatively little evidentiary value on its face" when it is conclusory and "'cite[s] no medical evidence, and provide[s] little to no elaboration.'"   *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (citing *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010) and *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018)).   It was not error for the ALJ to rely more heavily on other medical opinions in the record that collectively supported the RFC assessment.

Plaintiff also faults the ALJ for failing to mention two prior administrative findings from state agency psychological experts, Martin Isenberg, Ph.D., and Linda Skolnick, Psy.D.   Tr. 54, 62-63.   However, the opinions from these non-examining consultants were largely based on Dr. Spencer's evaluation findings (which the ALJ did consider and discuss) and merely echoed Dr. Spencer's finding that Plaintiff had mild mental limitations.   Where "failing to mention certain medical professionals and their diagnoses . . . ha[s] no practical effect on the outcome," it "does not constitute a sufficient reason for setting aside the administrative decision."   *Fox v. Barnhart*, 52 F. App'x 312, 312–13 (8th Cir. 2002) (per curiam) (citing *Senne v. Apfel,* 198 F.3d 1065, 1067 (8th Cir.1999)).

10

When assessing Plaintiff's RFC, the ALJ also properly considered and discussed Plaintiff's subjective complaints.   While the ALJ must consider all the factors relevant to subjective complaints, he need not include a discussion of every factor.  *See Casey v. Astru*e, 503 F.3d 687, 695 (8th Cir. 2007).   The ALJ discussed his review of the objective medical evidence, which documented only mild to moderate symptoms; general improvement of Plaintiff's physical symptoms with treatment, despite some reduced range of motion, fatigue, and weakness; largely normal physical and mental examination findings; consultative examinations demonstrating only mild mental impairments; and Plaintiff's reports of daily activities.   This is all that was required.   *See* 20 C.F.R. § 404.1529(c).

The ALJ also gave good reasons for why he found Plaintiff's subjective complaints inconsistent with the record.   For example, the ALJ noted that Plaintiff's MRI showing disc bulging, disc herniation, degenerative changes, and ligamentous hypertrophy, as well as indications of fatigue and weakness, supported Plaintiff's complaints to a degree; however, based on largely normal physical and mental examination findings otherwise, the ALJ concluded that an RFC incorporating a range of sedentary work was appropriate.   Tr. 20.   Indeed, records from Wagner's consultative evaluation documented that Plaintiff could walk on his heels and toes with only mild difficulty due to obesity, could hop on each foot, could squat about halfway down, needed no help changing for the examination or getting on and off exam table, and could rise from a chair without difficulty.   Tr. 19-20, 319-320.   Plaintiff's subsequent physical

11

examinations likewise documented normal gait, normal neck inspection, normal musculoskeletal findings, and normal heart rate and rhythm.  Tr. 20, 423, 425, 428, 440-441, 445, 447.  Plaintiff's reported activities including watching television, reading, cooking two days a week, cleaning, doing laundry, shopping once a week, and showering and dressing seven days a week.  Tr. 16, 44, 318.  Additionally, aside from generalized weakness, occasional sweats, and fatigue, examination notes indicated that Plaintiff was ambulatory and had no gross neurological deficits, no spine tenderness, and only mild pedal edema.  Tr. 20, 404, 406.

"Credibility determinations are the province of the ALJ," and the Court "defers to the ALJ's determinations as long as good reasons and substantial evidence support the ALJ's evaluation of credibility."  *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).  Based on the substantial evidence in the record as a whole, the ALJ was well within his discretion to discount Plaintiff's complaints of pain in assessing his RFC and conclude he was not disabled.

Importantly, the ALJ did not wholly discount the limitations set forth in the medical opinion evidence or described by Plaintiff in his testimony.  Rather, the ALJ carefully compared those limitations to the record as a whole and incorporated into Plaintiff's RFC those limitations that were consistent with the record.  It is not for this Court to reweigh the evidence, and reasonable minds could come to the same conclusion as the ALJ on this record.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**.   A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 31st day of December, 2024.